1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    JAMES RICHARD WHIPPLE,            )    1:09-cv-01437-JLT HC
                                        )
12              Petitioner,             )    ORDER DISMISSING AND DENYING
                                        )    PETITION FOR WRIT OF HABEAS CORPUS
13        v.                            )    (Doc. 1)
                                        )
14    DOMINGO URIBE, JR.,               )    ORDER DIRECTING CLERK OF COURT TO
                                        )    ENTER JUDGMENT AND CLOSE CASE
15              Respondent.             )
      _____)    ORDER DECLINING TO ISSUE A
16                                           CERTIFICATE OF APPEALABILITY

17

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19    pursuant to 28 U.S.C. § 2254.  On September 3, 2009, Petitioner filed his written consent to the

20    jurisdiction of the United States Magistrate Judge for all purposes.  (Doc. 9). On January 28, 2010,

21    Respondent filed her written consent to the jurisdiction of the United States Magistrate Judge for all

22    purposes.  (Doc. 17).

23                                    **PROCEDURAL HISTORY**

24          Petitioner is in custody of the California Department of Corrections and Rehabilitation

25    ("CDCR") serving an determinate sentence of nineteen years pursuant to a judgment of the Superior

26    Court of California, County of Fresno (the "Superior Court") for his December 6, 2007 conviction

27    for criminal threats, plus a fifteen-year enhancement for prior strike convictions. (Cal. Pen. Code §

28    422; § 667(a)).  (Clerk's Transcript on Appeal ("CT"), page 70).

1    It does not appear that Petitioner pursued a direct appeal in the California appellate courts to

2    its conclusion; however, Petitioner did raise his claims in various state habeas proceedings and

3    Respondent does not contend that Petitioner has failed to exhaust his state remedies regarding the

4    claims in the instant petition.  (Doc. 18, p. 3).

5                                    **FACTUAL BACKGROUND**

6    Because Petitioner did not pursue his appeal in the California appellate courts, there is no

7    formal recitation of the facts underlying Petitioner's conviction.  Accordingly, the Court will utilize

8    the summary of pertinent facts as contained in the report of the probation officer that was submitted

9    to the trial court for sentencing:

> On August 21, 2007, at 20:36 hours, officers were dispatched to a confidential location, regarding a subject armed with a gun.  Upon arrival officers contacted the victim, who stated that at 20:20 hours [defendant] knocked on the front door of his residence.  His wife answered the door and he could hear Whipple asking for him by name.  Whipple stated he had come on behalf of his son and needed to serve the victim with some paperwork.  The victim state[d] he thought this was suspicious because he had not spoken with his son since 1993.
>
> The victim closed the front door and continued the conversation with Whipple in the driveway.  Whipple began rummaging through a duffle bag and claimed he had a note from the victim's son.  The victim beca[me] worried and began backing away.  Whipple then removed an object from his duffle bag, which the victim believed was a semi-automatic handgun with a silencer.  Believing his son could have put a "hit" out on him, and fearing for his life, the victim ran into the street.  During this time the victim fell to the ground, sustaining abrasions to his wrist and knee.  He was yelling for someone to call the police.  As he ran he turned back and saw Whipple casually standing near the driveway.  He heard Whipple say, "That's okay.  I'll just get your family."  Fearing for his wife and granddaughter, who were still in the house, the victim began yelling louder for help.  Neighbors began turning on lights and coming outside, which scared Whipple and he began walking away from the victim's house.
>
> The victim's wife stated that when she answered the door Whipple asked for the victim.  Whipple had asked to come inside, but the victim refused and walked outside to talk.  He told his wife to close and lock the door.  The wife stated she could see the conversation, but could not hear anything, until the victim, until the victim began yelling, "Call the cops.  Call the cops."
>
> Assisting officers established a perimeter and located Whipple and the duffle bag.  The victim, his wife, and the granddaughter were all transported to Whipple's located [sic] and all positively identified him.  During the in-field show up Whipple made the spontaneous statement, "I'm an idiot.  I was at the wrong place at the wrong time."
>
> Whipple waived his rights and when asked, regarding the reason for him being in the area near the victim's house, Whipple stated, "A conspiracy took me to the area."  He claimed he went to a home in the area to ask a man a question.  When asked to clarify Whipple stated he went to ask [victim's name] about his son.  He further claimed he was "cellies" with the victim's son, for five years, in Pleasant Valley.  Whipple further stated that

when he tried to talk to the victim about his son the victim being [sic] began yelling and ran.  He then grabbed his bag and fled.  He then threw the bag and hid.  He denied going to the location to hurt anyone or having any weapon.  He refused to answer when asked if the victim's son sent him to the address.  He did state, "If I was there to do the real deal I would have done it for real.  I have two strikes."  He later admitted he went to the location to scare the victim, on behalf of the son, and claimed the family had "cut off" the son.  He admitted to having altered the paint gun.

> Officers began a check of the area around the victim's house and located the paintball gun behind some bushes near the victim's garage.  The victim positively identified the paintball gun.  Officers noticed that the $CO_2$ cartridge and the paintball holder were removed, making it look more like a real gun.  Inside the duffle bag officers found a paper with the victim's name, address, and work address.

(CT 80-81).[1]

## DISCUSSION

### I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).  Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant proceedings were initiated by the filing of the original petition on August 11, 2009, after the enactment of the AEDPA, and thus this case is governed by the AEDPA.

### II.  Legal Standard of Review

---

[1]The probation officer's statement of facts was taken from the police report compiled by the Fresno Police Department.  (CT 80).

1  A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

2  can show that the state court's adjudication of his claim:

3   (1)  resulted in a decision that was contrary to, or involved an unreasonable application of,
     clearly established Federal law, as determined by the Supreme Court of the United States; or

4
   (2)  resulted in a decision that "was based on an unreasonable determination of
5   the facts in light of the evidence presented in the State court proceeding.

6  28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S.

7  at 412-413.

8  The first prong of federal habeas review involves the "contrary to" and "unreasonable

9  application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed

10  questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d

11  628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it

12  applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it

13  confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but

14  reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor,

15  529 U.S. at 405.  A state court decision involves an "unreasonable application" of clearly established

16  federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively

17  unreasonable manner."  Brown v. Payton, 544 U.S. at 141;  Woodford v. Visciotti, 537 U.S. 19, 24-

18  25 (2002).

19  Consequently, a federal court may not grant habeas relief simply because the state court's

20  decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

21  Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  Section

22  2254(d)(1)'s reference to "clearly established Federal law" refers to "the governing legal principle or

23  principles set forth by [the Supreme Court] at the time a state court renders its decision."  Lockyer v.

24  Andrade, 538 U.S. at 64; Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005).

25  The second prong of federal habeas review involves the "unreasonable determination" clause

26  of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

27  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under

28  § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

1  claims "resulted in a decision that was based on an unreasonable determination of the facts in light of

2  the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v.

3  Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible,

4  thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").

5  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be

6  debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.

7  2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

8          The AEDPA also requires that considerable deference be given to a state court's factual

9  findings.  "Factual determinations by state courts are presumed correct absent clear and convincing

10  evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and

11  based on a factual determination will not be overturned on factual grounds unless objectively

12  unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-

13  El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of

14  historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943,

15  976-077 (2004).

16          To determine whether habeas relief is available under § 2254(d), the federal court looks to

17  the last reasoned state court decision as the basis of the state court's decision.  See Ylst v.

18  Nunnemaker, 501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

19  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its

20  decision, the federal habeas court conducts "an independent review of the record...to determine

21  whether the state court [was objectively unreasonable] in its application of controlling federal law."

22  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853

23  (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's

24  ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  Where the state court

25  denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the

26  deferential standard of the AEDPA does not apply and the federal court must review the petitioner's

27  claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

28          The prejudicial impact of any constitutional error is assessed by asking whether the error had

"a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

that the Brecht standard applies whether the state court recognized the error and reviewed it for

harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate

prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S.

648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective

assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice

standard is applied and courts do not engage in a separate analysis applying the Brecht standard.

Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835

(9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

   The instant petition alleges the following grounds for relief, all related to Petitioner's Sixth

Amendment right to the effective assistance of trial counsel:

| | |
|---|---|
| **Ground One** | **Petitioner's attorney failed to appear for hearings on September 24, 2007, and November 8, 2007, and failed to produce "property" that had been released to counsel.** |
| **Ground Two** | **Petitioner's attorney was not in court for "discovery and other dates".** |
| **Ground Three** | **Petitioner's attorney released confidential information without Petitioner's permission.** |
| **Ground Four** | **Petitioner's attorney failed to file a "Romero" motion when requested to do so by the trial judge.** |

**A.  Lack of Exhaustion.**

   As a preliminary matter, and although Respondent has not raised the issue, the Court

concludes sua sponte that all of Petitioner's claims should be dismissed as unexhausted.  A petitioner

who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of

habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion

doctrine is based on comity to the state court and gives the state court the initial opportunity to

correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731

(1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir.

1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct alleged violations of the prisoners' federal rights'" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366. The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law.* See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident,"* Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

1  Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

2      In the instant petition, the record now before the Court establishes that Petitioner sought to

3  exhaust his remedies for the four claims by filing habeas corpus petitions in the Superior Court, the

4  California Court of Appeal, Fifth Appellate District ("5th DCA"), and the California Supreme Court.

5  (Doc. 1, pp. 30-33).  Calling his petition in the Superior Court "vaguely and incoherently worded,"

6  the state judge denied the petition on the grounds that Petitioner had failed to allege the facts

7  underlying his claims of ineffective assistance with sufficient specificity.  (Doc. 1, pp. 30-31).  The

8  5th DCA summarily denied the second petition.  (Id., p. 32).  The California Supreme Court petition

9  was denied with a citation to People v. Duvall, 9 Cal.4th 464, 474 (1995), as the basis for the denial.

10  (Doc. 1, p. 33).

11      Under California law, a citation to Duvall indicates that a petitioner has failed to state his

12  claim with sufficient particularity for the state court to examine the merits of the claim, and/or has

13  failed to "include copies of reasonably available documentary evidence supporting the claim,

14  including pertinent portions of trial transcripts and affidavits or declarations."  Duvall, 9 Cal.4th at

15  474.

16      While recognizing that Petitioner raised the instant claims in his action before the California

17  Supreme Court, it nevertheless appears to this Court that Petitioner's state court remedies have not

18  been exhausted because Petitioner's California Supreme Court petition was denied not on its merits,

19  but rather on procedural grounds, i.e., by the citation to Duvall, which indicates that Petitioner had

20  failed to allege his claims with sufficient particularity.  This is further supported by the fact that the

21  same conclusion was reached by the Superior Court in denying the first petition.

22      In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit considered a

23  state petition denied with a citation to In re Swain, 34 Cal.2d 300 (1949).  Like Duvall, in Kim, the

24  Ninth Circuit found that the California Supreme Court's citation to Swain indicated that the petition

25  was denied because it was not alleged with sufficient particularity and that this deficiency could be

26  cured with a subsequent petition.  Thus, the Swain citation is "deemed a denial of the petition on

27  procedural grounds, leaving state remedies unexhausted."  Kim, 799 F.2d at 1319.

28      However, in Kim, the Ninth Circuit also stated that it was "incumbent" on the district court,

1  in determining whether the federal standard of "fair presentation" of a claim to the state courts had

2  been met, to independently examine Kim's petition to the California Supreme Court. Id. at 1320.

3  "The mere recitation of In re Swain does not preclude such review." Id. Indeed, the Ninth Circuit

4  has held that where a prisoner proceeding pro se is unable to meet the state rule that his claims be

5  pleaded with particularity, he may be excused from complying with it. Harmon v. Ryan, 959 F.2d

6  1457, 1462 (9th Cir. 1992)(citing Kim, 799 F.2d at 1321). "Fair presentation" requires only that the

7  claims be pleaded with as much particularity as is practicable. Kim, 799 F.2d at 1320.

8        Because Swain and Duvall stand for the same proposition, and applying the principles set

9  forth in Kim v. Villalobos, this Court will therefore review Petitioner's habeas petition filed in the

10  California Supreme Court to determine whether his claims were "fairly presented" under federal

11  exhaustion standards.

12       According to the exhibits filed by Respondent, Petitioner raised the same four claims in the

13  California Supreme Court as those raised now in the instant petition. (LD 4). In that state petition,

14  Petitioner provided no additional details regarding the facts underlying his ineffective assistance of

15  counsel claims than he did in his Superior Court petition or in the instant federal petition. Thus, after

16  a careful, independent analysis of Petitioner claims raised in the California Supreme Court, the Court

17  concludes that Petitioner did not "fairly present" his claims to the high court because they were not

18  presented with "as much particularity as is practicable." Kim, 799 F.2d at 1320. Thus, not having

19  been "fairly presented" to the state's highest court, those claims have not been fully exhausted.

20       Moreover, as mentioned, the citation to Duvall did not foreclose Petitioner from re-filing his

21  petition in the California Supreme Court along with additional information or documents that would

22  have permitted that court to make a decision on the merits, thereby exhausting Petitioner's claims.

23  Kim, 799 F.2d at 1319. Petitioner has failed to follow this course. Accordingly, the Court concludes

24  that Petitioner did not exhaust his claim in the California Supreme Court, and thus the entire petition

25  is unexhausted and must be dismissed.

26       **B. Preclusion Under The Tollett Rule.**

27       Respondent contends that Petitioner's claims are precluded under Tollett v. Henderson, 411

28  U.S. 258, 267, 93 S.Ct. 1602 (1973). The Court agrees.

1    In <u>Tollett</u>, the United States Supreme Court held that where a defendant pleads guilty or no

2  contest, he may only challenge whether the guilty plea was valid–i.e., knowing, intelligent, and

3  voluntary–and he may not raise any constitutional issues that occurred prior to the entry of the plea.

4  <u>Id</u>. This is consistent with other precedent holding that a guilty plea or plea of no contest which is

5  knowingly, intelligently, and voluntarily made, bars any right to later assert claims based on

6  constitutional deprivations allegedly occurring prior to the guilty plea.  <u>See, e.g.</u>, <u>Lefkowitz v.</u>

7  <u>Newsome</u>, 420 U.S. 283, 288, 95 S.Ct. 886 (1975); <u>McMann v. Richardson</u>, 397 U.S. 759, 90 S.Ct.

8  1441 (1970); <u>Parker v. North Carolina</u>, 397 U.S. 790, 90 S.Ct. 1458 (1970).

9    An exception, known as the "<u>Lefkowitz</u> exception,"  may exist where state law permits a

10  challenge to an adverse pre-trial ruling despite a later guilty plea.  <u>See Lefkowitz</u>, 420 U.S. at 288.  In

11  California, a defendant may raise an issue on appeal despite a guilty plea if the defendant has filed a

12  written statement with the trial court setting forth the grounds for the claim and the trial court has

13  issued a certificate of probably cause for the appeal.  <u>See</u> <u>Mitchell v. Superior Court for Santa Clara</u>

14  <u>County</u>, 632 F.2d 767, 771 (9th Cir. 1980), citing Cal. Pen. Code §1237.5.  This rule, however, does

15  not operate as an exception to the <u>Tollett</u> rule.  <u>See Mitchell</u>, 632 F.2d at 772. The only <u>Lefkowitz</u>

16  exception under California law is a statute permitting an appeal based on an alleged Fourth

17  Amendment violation.  <u>See id.</u>  at 771; <u>see also</u> Cal. Pen. Code §1538.5 (authorizing motion to

18  suppress evidence).  A guilty plea or plea of no contest does not fall under the <u>Lefkowitz</u> exception.

19  <u>See Mitchell</u>, 632 F.2d at 773.  Another exception is where the challenge goes to "the power of the

20  state to bring the defendant into court to answer the charges brought against him."  <u>Journigan v.</u>

21  <u>Duffy</u>, 552 F.2d 283 (9th Cir. 1977).

22    Thus, under the <u>Tollett</u> rule, a defendant who pleaded guilty or no contest may only raise

23  claims in his federal habeas petition which challenge the validity of the plea or fall within either the

24  <u>Lefkowitz</u> or <u>Journigan</u> exceptions.  Claims of ineffective assistance of counsel with respect to the

25  plea itself are also permitted under <u>Tollett</u>.  <u>See Tollett</u>, 411 U.S. at 267 (citing <u>McMann</u>, 397 U.S. at

26  771).  Here, as discussed above, Petitioner pleaded no contest  in state court to the charge of making

27  criminal threats.  In his petition, he raises claims related to the denial of his right to effective

28  assistance of counsel.  Each claim involves events that occurred prior to the entry of his plea.

Petitioner does not challenge the power of the State of California to have brought him into court to answer the charges against him.  Thus, the Journigan exception is inapplicable.  Moreover, under the Lefkowitz exception, California only permits a challenge to a guilty plea based on a Fourth Amendment violation.  Petitioner makes no such claim; thus, Lefkowitz is also inapposite.  Accordingly, Respondent is correct that Petitioner's four claims of ineffective assistance of counsel are foreclosed by the Tollett rule.

However, even if Petitioner's claims were fully exhausted and were not foreclosed by Tollett, the Court concludes that Petitioner's claims must also fail on their merits.

**C.  The Standard For Ineffective Assistance of Counsel**.

Effective assistance of trial counsel is guaranteed by the Sixth Amendment.  Strickland v. Washington, 466 U.S. 668, 685 (1984).  Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test.

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance of counsel.  Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.

1   Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general

2   standard, a state court has even more latitude to reasonably determine that a defendant has not

3   satisfied that standard.  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating

4   whether a rule application was unreasonable requires considering the rule's specificity.  The more

5   general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

6        With these principles in mind, the Court now turns to an analysis of Petitioner's four claims

7   of ineffective assistance of trial counsel.

8        **D.   Petitioner Was Not Denied the Effective Assistance of Counsel As To**
      **Ground One.**

9

10       Petitioner contends that he was denied his constitutional right to the effective assistance of

11  counsel when his appointed attorney failed to appear at two hearings, one held on September 24,

12  2007 and the other held on November 8, 2007.  Petitioner's claim is without merit.

13       First, Petitioner fails to explain how counsel's failure to appear at those two hearings

14  indicates counsel's performance fell below the standard required of a reasonable attorney.  As

15  Respondent correctly points out, substitute counsel appeared with Petitioner at both of those

16  hearings: at the arraignment on September 24, 2007, Petitioner was represented by Carl Reed (CT

17  55), and at the November 8, 2007 trial confirmation hearing, Petitioner was represented by Craig

18  Singer.  (CT 56).  In other words, Petitioner was represented at all times by counsel during the

19  hearings about which he complains.  Petitioner does not explain the reasons why a substitute attorney

20  appeared on his behalf in lieu of his appointed counsel, Marcia Machado.  Accordingly, the Court

21  has no basis on which to decide whether Ms. Machado's inability to attend the hearings, standing

22  alone, constituted deficient performance on her part.

23       More significantly, Petitioner has failed to show how such circumstances, even should they

24  rise to the level of a deficient performance by Ms. Machado, caused him prejudice.  Again, as

25  Respondent points out, at the first hearing on September 24, 2007, the substitute attorney, Mr. Reed,

26  appeared and entered a plea of not guilty on behalf of Petitioner.  (CT 55).  At the second hearing, on

27  November 8, 2007, a different public defender, Mr. Singer, represented Petitioner for a trial

28  confirmation.  (CT 56).  At that latter hearing, Petitioner apparently waived his speedy trial rights

1    and the tentative trial date was set for November 29, 2007.  (Id.).  Nothing in the record indicates that

2    substitute counsel performed inadequately.   Nor does anything in the record indicate that Petitioner

3    objected to substitute counsel representing him at these two proceedings.

4         If Petitioner is claiming that the mere presence of a substitute public defender for a routine

5    court appearance is both deficient performance and prejudicial, he has failed to state any facts that

6    would support such a conclusion.  Alternatively, if he is claiming that both Mr. Singer and Mr. Reed

7    themselves acted deficiently at those hearings, he has similarly failed to allege any facts to support

8    such a claim.

9         In sum, Petitioner has failed to show that the state court's adjudication was contrary to or an

10   unreasonable application of clearly established federal law.  Accordingly, the Court rejects Ground

11   One as being entirely without merit.

12   **E.  Petitioner Was Not Denied The Effective Assistance Of Counsel As To Ground**
     **Two**.
13

14        Petitioner next contends that he was denied the effective assistance of counsel when Ms.

15   Machado failed to provide discovery documents to the prosecutor relating to his defense.  Again, this

16   claim must be rejected because Petitioner has not identified (1) the documents that his counsel

17   allegedly failed to provide to prosecutors, or (2) how counsel's failure to provide such documents fell

18   below that standard for a reasonable attorney or how such a deficient performance actually

19   prejudiced Petitioner.  Absent such allegations, Petitioner's claim cannot stand.  See James v. Borg,

20   24 F.3d 20, 26 (9th Cir. 1994)(claim of defective defense is deficient for petitioner's failure to

21   identify any evidence that counsel should have presented on petitioner's behalf).

22   **F.  Petitioner Was Not Denied The Effective Assistance Of Counsel As To Ground**
     **Three**.
23

24        Petitioner next contends that he was denied the effective assistance of counsel when his

25   attorney released confidential information without his authorization.  Again, this claim is without

26   merit.

27        Again, the petition is not helpful.  It is unclear from the petition precisely what "confidential

28   information" counsel is alleged to have released without Petitioner's authorization.  In his petition,

1   Petitioner includes a letter dated September 2, 2008, some ten months after Petitioner had entered his

2   guilty plea, from an individual identified only as "Charlie." (Doc. 1, p. 16).  In the letter, Charlie

3   notes that he had contacted Ms. Machado, who explained to him that Petitioner had pulled out a

4   paint gun during the commission of the crime.  Charlie mentions that a letter from "Tony" is the

5   "missing link" and that if Petitioner could get his new attorney, Mr. Zimmerman, to question Tony,

6   that might help Petitioner's case.  Finally, Charlie explains that he talked to Ms. Machado regarding

7   obtaining Petitioner's personal effects that were seized by police when he was arrested.  (Id.).  The

8   record also contains several letters between Petitioner and Mr. Zimmerman regarding their efforts to

9   obtain Petitioner's effects, which, ultimately, appear to have been successful.  (Doc. 1, pp. 18-26).

10          Nothing in the foregoing evidence supports a claim that counsel's performance was deficient

11  for releasing unauthorized confidential information.  Nor is there any evidence that such a deficient

12  performance, even if properly alleged, prejudiced Petitioner.  Accordingly, the Court rejects Ground

13  Three.

14          **G.  Petitioner Was Not Denied The Effective Assistance Of Counsel As To Ground
             Four.**

15

16          Finally, Petitioner contends that trial counsel failed to file a motion to strike his prior "strike"

17  convictions.  Again, this claim is without merit.

18          Under California's Three Strikes law, two prior serious or violent convictions that are

19  pleaded and proved can result in an enhancement of a defendant's sentence to a minimum of twenty-

20  five years to life.  However, under the California Supreme Court's decision in People v. Superior

21  Court (Romero), 13 Cal.4th 497 (1996), state trial courts retain discretion to dismiss prior "strike"

22  convictions "in the interest of justice."  A defendant making such a request of a sentencing court

23  must file a Romero motion.

24          Here, as Respondent correctly observes, the record is unequivocal that Petitioner's trial

25  counsel did indeed make an oral Romero motion.  (CT 67; Reporter's Transcript on Appeal ("RT")

26  304-307).  Indeed, both Petitioner and Ms. Machado argued in support of such a motion.  (RT 301-

27  307).  Machado's argument indicates that both the defense and prosecution had arrived at a plea

28  agreement wherein Petitioner would serve nineteen years.  However, defense counsel made the

1   Romero request in order to permit the trial court to arrive at the nineteen year prison sentence

2   without imposing any Three Strikes prior convictions because, under counsel's approach, Petitioner

3   would be permitted to earn "half time" credits while, under a Three Strikes sentence, he would have

4   to serve 85 per cent of his sentence, something Petitioner referred to as a "life sentence."  (RT 306).

5        The sentencing court eventually denied the motion, ruling that he could not disregard all of

6   Petitioner's three prior "strikes."  (RT 309).[2]  However, Ground Four does not argue that the trial

7   court erred in denying the Romero motion, but instead that counsel's performance was deficient and

8   prejudicial because she never made such a motion in the first place.  Since Ground Four is not

9   supported by the record, and indeed is directly contradicted by the record, it must be rejected.

10                                        **CONCLUSION**

11        Petitioner has failed to show that the state court's rejection of his four claims for ineffective

12   assistance of counsel are contrary to or an unreasonable application of clearly established federal

13   law, as described in Strickland and its progeny.  Accordingly, all four grounds for relief in the instant

14   petition are rejected on their merits; thus, the Court has no alternative but to deny the petition and

15   enter judgment in favor of Respondent.

16        Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a

17   writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition,

18   and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336

19   (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28

20   U.S.C. § 2253, which provides as follows:

21        (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

22        (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

23   

24   

25        (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

26             (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

27   

28   [2]The sentencing court dismissed the two older strike convictions from 1979 and 1989, but refused to strike Petitioner's most recent strike from a 1994 robbery conviction.  (RT 309).

1      (B) the final order in a proceeding under section 2255.
   (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made
2  a substantial showing of the denial of a constitutional right.
   (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or
3  issues satisfy the showing required by paragraph (2).

4      If a court denied a petitioner's petition, the court may only issue a certificate of appealability

5  when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. §

6  2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists

7  could debate whether (or, for that matter, agree that) the petition should have been resolved in a

8  different manner or that the issues presented were 'adequate to deserve encouragement to proceed

9  further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880,

10  893 (1983)).

11      In the present case, the Court finds that Petitioner has not made the required substantial

12  showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.

13  Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal

14  habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.

15  Accordingly, the Court DECLINES to issue a certificate of appealability.

16  **ORDER**

17      For the foregoing reasons, the Court HEREBY ORDERS as follows:

18     1.  The petition for writ of habeas corpus (Doc. 1), is DISMISSED and DENIED;

19     2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

20     3.  The Court DECLINES to issue a certificate of appealability.

21

22  IT IS SO ORDERED.

23  Dated:   **April 21, 2011**                   **/s/ Jennifer L. Thurston**
                                   UNITED STATES MAGISTRATE JUDGE